# FEDERAL PUBLIC DEFENDER

## DISTRICT OF NEW JERSEY

K. ANTHONY THOMAS, FEDERAL PUBLIC DEFENDER



800 COOPER STREET • SUITE 350 • CAMDEN, NEW JERSEY 08102 • (856) 757-5341

April 1, 2026

Patricia S. Dodszuweit, Clerk
United States Court of Appeals for The Third Circuit

> Re:  *Michael Romano v. Warden, FCI Fairton*,
> Appeal No. 25-1876
> Supplemental briefing on mootness

Dear Ms. Dodszuweit:

Undersigned counsel respectfully contends that this case continues to present an "actual, ongoing case[ ] or controvers[y]," *County of Morris v. Nationalist Movement,* 273 F.3d 527, 533 (3d Cir. 2001) and that Mr. Romano has a "legally cognizable interest in the outcome." *Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd.,* 336 F.3d 211, 216 (3d Cir. 2003) (internal citations omitted). This is because, while Mr. Romano is no longer in Bureau of Prisons (BOP) custody, he is still serving his sentence of supervised release with restrictive conditions of home detention. *Cf. United States v. Kissinger*, 309 F.3d 179 (3d Cir. 2002) (appeal from judgment revoking probation and sentencing defendant to term of imprisonment and probation was mooted where defendant completed term of imprisonment and probation).

During the COVID-19 pandemic, Mr. Romano was lawfully released to home confinement by the BOP under the authority of the CARES Act. Without

cause, notice, or process, in July 2022, the BOP revoked his home confinement—forcing him to return to prison—and for several years lied about the reason why. Mr. Romano pursued habeas relief, seeking a return to the status quo on home confinement (*not* a revocation hearing) with the instructions that any future revocation would have to comply with due process. *See Harper v. Young*, 64 F.3d 563, 567 (10th Cir. 1995), *aff'd sub. nom.*, 520 U.S. 143 (1997). During the pendency of the litigation, on December 12, 2024, then-President Joe Biden commuted the sentences of imprisonment of every person—nearly 1,500 individuals—who were still on home confinement after placement there under the CARES Act. The District Court below acknowledged that "[g]iven the uniformity of the commutations, it appears highly likely that Mr. Romano would have received clemency had he remained on home confinement." Appx8 (Op. at 6 n.8). If his sentence of imprisonment had been commuted, Mr. Romano would finish his term of supervised release on December 22, 2027. Thus, the government's constitutional violation affected the execution and duration of Mr. Romano's sentence such that the District Court had jurisdiction to proceed to the merits of the case. Without the commutation, but earning the benefits of sentence reduction under the First Step Act and RDAP, Mr. Romano would have been released from the BOP in 2029, with release to "community corrections" (either a halfway house or home confinement) in 2026.

However, in mid-January 2026, Mr. Romano had a medical emergency in BOP custody: the BOP missed a developing MRSA infection in his chest cavity until he almost died. Mr. Romano required major chest surgery and one month of intravenous antibiotics in a skilled nursing facility. Undersigned counsel was able to secure a sentence reduction in the Eastern District of New York by way of 18 U.S.C. § 3582(c)(1)(A). Specifically, on March 24, 2026, Mr. Romano was resentenced to time served, released from the BOP, and began to serve a three-year term of supervised release. Judge Denny Chin, Circuit Court Judge sitting as a Visiting Judge, determined he would impose a period of home detention during supervised release. The government argued that imposing three years of home detention was "consistent with the Court's reasoning explained at the hearing, which took into account that the defendant's original sentence included an incarceratory term to end on May 10, 2029." Undersigned counsel argued that restrictive conditions of home detention would not serve the purposes of supervised release, and so no more than three to six months would be appropriate. Crim. No. 09-168, ECF No. 746 (E.D.N.Y.) The Court imposed one year of home detention. *Id*. at ECF No. 747.

Though Mr. Romano's release from custody for health reasons is a change in circumstances from when he filed his petition three years ago, it has neither "forestalled any occasion for meaningful relief." *Artway v. Att'y Gen.,* 81 F.3d

1235, 1246 (3d Cir. 1996) (citation omitted), nor "completely eradicated the effects of the alleged violation," *Burns v. PA Dep't of Corr.*, 544 F.3d 279, 283 (3d Cir. 2008). Mr. Romano's restrictive conditions on supervision directly flow from the government's violation of his rights. Specifically, the government relied on the amount of time Mr. Romano was going to spend in BOP custody *following the unlawful revocation* to argue he should now spend that same amount of time on home detention following his compassionate release—an argument Judge Chin considered in ultimately resentencing Mr. Romano to one year of home detention as a condition of his three years of supervision. Assuming Mr. Romano continues to comply with all conditions of supervision, *see Honig v. Doe,* 484 U.S. 305, 320 (1988), Mr. Romano would be able to benefit from a decision in this Circuit finding jurisdiction and that Mr. Romano's constitutional rights were violated. Armed with this positive decision, Mr. Romano would seek relief in the Eastern District of New York, either a removal of the condition of home detention, reduction in his term of supervision, or early termination of supervision, based on the amount of time he unlawfully spent in custody due to the government's actions. *Cf. Jago v. Van Curen*, 454 U.S. 14, 21-22 n.3 (1981) (explaining if the rescission of parole were set aside, the court could order that the petitioner be released from the conditions attached to his current parole status); 18 U.S.C. § 3583(e) (modification of supervision). Given that the sentencing court has already given

Mr. Romano a break in reducing his sentence, any arguments for further relief would be vehemently opposed by the government, and examined skeptically by the sentencing court, absent a change in circumstances such as the grant of habeas relief.

Though this scenario is similar to *Burkey v. Marberry*, 556 F.3d 142, 146-50 (3d Cir. 2009), a case this Court deemed moot, the differences matter. Like Mr. Romano's habeas petition, Burkey "attack[ed] only what the BOP had done" and so he had to "demonstrate that collateral consequences exist" to maintain the case after he was released from BOP custody. *Id.* at 148. Burkey urged that the BOP's violation of the Administrative Procedures Act that denied him a second year off his sentence for his second time participating in RDAP during a second federal incarceration was "the basis for the sentencing court to now afford him relief against an indisputably valid term of supervised release." *Ibid*. But Burkey could not make the required showing that relief by the sentencing court was "likely." *See Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477 (1990); *Spencer v. Kemna,* 523 U.S. 1, 14-16 (1998) (rejecting numerous collateral consequences about the effects of parole revocation proffered by the petitioner because they were no more than "a possibility rather than a certainty or even a probability," or pure speculation).

Here, the collateral consequence of Mr. Romano's continued wrongful imprisonment is not speculative. Before the sentencing court, the government has already (and recently) argued that Mr. Romano's term of imprisonment (and what was reduced) should affect the conditions of his supervised release. That is, even though imprisonment and supervision serve different goals and are not to be viewed as interchangeable punitive measures, *see United States v. Johnson,* 529 U.S. 53 (2000), the government argued and the sentencing court adopted some measure of punishment during supervised release.

Mr. Romano also presents a different case than *Burkey* or *Spencer*, because his petition sought to protect a fundamental personal liberty from the government's violation of his procedural and substantive due process rights. In *United States v. Frumento,* this Court, *en banc*, recognized that a case is not moot if a litigant contesting his detention takes "prompt, diligent, and timely" action to perfect his appeal, especially "when fundamental personal liberties are at issue and review of an order of confinement as a practical matter is not available." 552 F.2d 534, 541 (3d Cir.1977) (en banc). This Court stated:

> Even if we could not construct or project any "capability of repetition" in this case, we would nevertheless decline to dismiss [this] appeal as moot. While in each of the instances discussed, the Supreme Court has determined that "capability of repetition" existed, we are of the view that such capability was perceived so as to satisfy the true governing consideration behind the Court's decision—that of having review available when significant interests are at stake.

*Id.* at 540. Significant interests are at stake here. As the District Court recognized below, unless this Court accepts that there is jurisdiction, Mr. Romano "is left without any forum to vindicate a serious constitutional wrong." Appx15 (Op. at 13 & n.11). The District Court found that out-of-circuit cases that have recognized a liberty interest in remaining on home confinement "appear[ ] more faithful to the animating principles of the Suspension Clause" and suggested this Court should "reconsider or modify its approach [to jurisdictional questions] under the facts of this case." *Id.*

In sum, the collateral consequence exception to the mootness doctrine applies and Mr. Romano has shown that, if this Court rules in his favor in this appeal, it would allow the District Court to proceed to the merits. If Mr. Romano is granted habeas relief, he will pursue relief by the sentencing court that oversees his term of supervised release. He respectfully requests that this Court find the case is not moot and decide the important jurisdictional question raised in his appeal so the District Court can reach the merits of his constitutional claim.

Sincerely,

*s/ Alison Brill*

ALISON BRILL
Assistant Federal Public Defender

cc:     Jane Dattilo, AUSA (via ECF)