# FEDERAL PUBLIC DEFENDER
## DISTRICT OF NEW JERSEY
K. ANTHONY THOMAS, FEDERAL PUBLIC DEFENDER



800 COOPER STREET • SUITE 350 • CAMDEN, NEW JERSEY 08102 • (856) 757-5341

April 8, 2026

Patricia S. Dodszuweit, Clerk
United States Court of Appeals for the Third Circuit
  For The Third Circuit

> Re:   *Michael Romano v. Warden, FCI Fairton*,
>        Appeal No. 25-1876
>        Response to supplemental briefing on mootness

Dear Ms. Dodszuweit:

As it did throughout the litigation below, the government mischaracterizes Mr. Romano's petition for habeas relief. The government writes in its April 1, 2026 letter that Mr. Romano "sought transfer to home confinement," and that the BOP returned him to custody "after having reevaluated his placement." Ltr. at 1-2. This is not an accurate description of Mr. Romano's claim or the BOP's action. Moreover, these details make a difference and set Mr. Romano's unique case apart from any other case undersigned counsel has located dismissing a Section 2241 petition of a released prisoner on mootness grounds.

The Bureau of Prisons acted unlawfully in revoking Mr. Romano from home confinement, a form of conditional liberty that confers a vested interest in remaining at home that cannot be revoked absent an alleged violation, notice, and opportunity to be heard. *See Morrissey v. Brewer*, 408 U.S. 471 (1972). Mr.

Romano raised both a procedural and substantive due process challenge to his revocation because there was no reason, notice, or hearing for that revocation. The government's version of why it revoked Mr. Romano changed over time as Mr. Romano exhausted his administrative remedies, moved into Court, then was represented by undersigned counsel in Court, and finally what was revealed through discovery. *See* Appx7 ("The shifting nature of the BOP's explanations over the past three years—some of which were initially presented to the Court in sworn declarations—has given rise to serious concerns about its candor, particularly in light of the absence of any alleged rule violation or contemporaneous justification in the record."). Whatever version is credited (and that has not been established), it is indisputable that prosecutors from the United States Attorney's Office for the Eastern District of New York had a hand in how Mr. Romano was treated. *See* Appx13 (describing revocation as appearing "unfair or unjust" but declining to find jurisdiction to correct it).

What is significant and relevant about the circumstances in 2022 is that Mr. Romano was not protected by his good behavior. Indeed, the government asserted a concerning position below - that those on home confinement receive procedural protections only if they are revoked for a violation but not if they are revoked *without* a violation. Thus, although there is a presumption that someone on supervision will comply with his conditions, *see Honig v. Doe,* 484 U.S. 305, 320

(1988), good conduct did not protect Mr. Romano from unlawful government action before. Because of the government's actions in revoking Mr. Romano without cause and then asserting that there is no process to give when there is no violation, Mr. Romano sought some further protection from the District Court. To remedy the constitutional violation, Mr. Romano asked the District Court to enter a conditional release order that Mr. Romano be released from custody unless he is reinstated on home confinement *and* further protections in place once he returns home. Civ. No. 23-2919 (D.N.J), ECF No. 55-1, at 25-26. This is precisely what the Supreme Court ordered in *Harper v. Young*, reinstatement with the additional caveat that "[a]fter reinstatement, any attempt to remove Mr. Harper from the Program must, of course, comply with the procedures mandated by this opinion." 64 F.3d 563, 565, 567 (10th Cir. 1995), *aff'd* , 520 U.S. 143 (1997).

An opinion from this Court affirming that home confinement confers a liberty interest such that due process protections attach is a solution contemplated by the broad relief the habeas statute confers. *See Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) ("Federal courts may 'dispose of habeas corpus matters as law and justice require.'" (quoting 28 U.S.C. § 2243). Indeed, "[h]abeas 'is, at its core, an equitable remedy.'" *Boumediene v. Bush*, 553 U.S. 723, 780 (2008) (quoting *Schlup v. Delo*, 513 U.S. 298, 319 (1995)).

It is true that Mr. Romano is out of BOP custody, but he is again living in the community under a different form of conditional liberty, supervised release. *See United States v. Smalls*, 155 F.4th 216, 220-22 (3d Cir. 2025) ("Supervised release is a form of postconfinement monitoring that permits a defendant conditional liberty by allowing him to serve part of his sentence outside of prison.") (internal citations omitted). And prosecutors from the United States Attorney's Office for the Eastern District of New York have expressed, in their opposition to Mr. Romano's release from custody on medical grounds and in their desire for his entire term of supervised release to be severely restricted, their continued desire for punishment. This same Office had a hand in Mr. Romano's unlawful revocation and Mr. Romano's desire for resolution of his underlying petition has continuing importance and salience as he navigates the next three years of supervision.

As the government acknowledges, there is "an exception to the mootness doctrine for cases that are 'capable of repetition, yet evading review.'" *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (citation omitted); *see also* Ltr. 7. The unusual circumstances here can meet that exception. Mr. Romano's challenge to his revocation has always risked the duration being "too short to be fully litigated," *Spencer*, 523 U.S. at 17, a concern that has been exacerbated by delays (largely attributable to the government) in the District Court. And, unfortunately, there

persists a "reasonable expectation that [he] will be subject to the same action again," because, as described above, the government has opposed all forms of relief and even encouraged his unlawful revocation below, despite an absence of any violation on his part. He remains at serious risk of government interference with his ongoing liberty.

In sum, exceptions to the mootness doctrine apply and Mr. Romano has shown that habeas relief can and should directly affect the conditional liberty he now has. He respectfully requests that this Court find the case is not moot and decide the important jurisdictional question raised in his appeal so that the District Court can reach the merits of his constitutional claim.

If, on the other hand, this Court determines the case is moot, Mr. Romano respectfully requests that the underlying opinion be vacated. *See United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950).

Sincerely,

*s/ Alison Brill*

ALISON BRILL
Assistant Federal Public Defender

cc: Jane Dattilo, AUSA (via ECF)